# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT ANTHONY MUGICA, <br>           Plaintiff, <br> v. <br> NANCY A. BERRYHILL, Acting Commissioner of Social Security, <br>           Defendant. | Case No. 8:17-cv-00185-SHK <br><br> OPINION AND ORDER |

Plaintiff Robert Anthony Mugica ("Plaintiff") seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner" or the "Agency") denying his application for disability insurance benefits ("DIB"), under Title II of the Social Security Act (the "Act"), and supplemental security income ("SSI") under Title XVI of the Act. This Court has jurisdiction, under 42 U.S.C. §§ 405(g) and 1383(c)(3), and, pursuant to 28 U.S.C. § 636(c), the parties have consented to the jurisdiction of the undersigned United States Magistrate Judge. Because the Commissioner's decision is based on proper legal standards and is supported by substantial evidence, the Commissioner's decision is AFFIRMED and the case is DISMISSED.

## I. BACKGROUND

Plaintiff applied for DIB on August 13, 2014, and SSI on August 15, 2014, alleging disability beginning on February 6, 2014. Transcript ("Tr.") 277-87.[1] Following a denial of benefits, Plaintiff requested a hearing before an administrative law judge ("ALJ") and, on September 27, 2016, an ALJ determined Plaintiff was not disabled. Tr. 20-29. Plaintiff sought review by the Appeals Council, however, review was denied, on December 7, 2016. Tr. 1-6. This appeal followed.

## II. STANDARD OF REVIEW

The reviewing court shall affirm the Commissioner's decision if the decision is based on correct legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); Batson v. Comm'r Soc. Sec. Admin., 359 F.3d 1190, 1193 (9th Cir. 2004). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation and internal quotation omitted). In reviewing the Commissioner's alleged errors, this Court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986).

"'When evidence reasonably supports either confirming or reversing the ALJ's decision, [the Court] may not substitute [its] judgment for that of the ALJ.'" Ghanim v. Colvin, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting Batson, 359 F.3d at 1196)); Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002) ("If the ALJ's credibility finding is supported by substantial evidence in the record, [the Court] may not engage in second-guessing." (internal citation omitted)). A reviewing court, however, "cannot affirm the decision of an agency on a ground that the

---

[1] A certified copy of the Administrative Record was filed on July 10, 2017. Electronic Case Filing Number ("ECF No.") 19. Citations will be made to the Administrative Record or Transcript page number rather than to the ECF page number.

2

agency did not invoke in making its decision." Stout v. Comm'r Soc. Sec. Admin., 454 F.3d 1050, 1054 (9th Cir. 2006) (citation omitted). Finally, a court may not reverse an ALJ's decision if the error is harmless. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (citation omitted). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." Shinseki v. Sanders, 556 U.S. 396, 409 (2009).

## III. DISCUSSION

### A. Establishing Disability Under The Act

To establish whether a claimant is disabled under the Act, it must be shown that:

> (a) the claimant suffers from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months; and
>
> (b) the impairment renders the claimant incapable of performing the work that the claimant previously performed and incapable of performing any other substantial gainful employment that exists in the national economy.

Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)). "If a claimant meets both requirements, he or she is 'disabled.'" Id.

The ALJ employs a five-step sequential evaluation process to determine whether a claimant is disabled within the meaning of the Act. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520. Each step is potentially dispositive and "if a claimant is found to be 'disabled' or 'not-disabled' at any step in the sequence, there is no need to consider subsequent steps." Tackett, 180 F.3d at 1098; 20 C.F.R. § 404.1520. The claimant carries the burden of proof at steps one

3

through four, and the Commissioner carries the burden of proof at step five. Tackett, 180 F.3d at 1098.

The five steps are:

Step 1. Is the claimant presently working in a substantially gainful activity [("SGA")]? If so, then the claimant is "not disabled" within the meaning of the [] Act and is not entitled to [DIB]. If the claimant is not working in a [SGA], then the claimant's case cannot be resolved at step one and the evaluation proceeds to step two. See 20 C.F.R. § 404.1520(b).

Step 2. Is the claimant's impairment severe? If not, then the claimant is "not disabled" and is not entitled to [DIB]. If the claimant's impairment is severe, then the claimant's case cannot be resolved at step two and the evaluation proceeds to step three. See 20 C.F.R. § 404.1520(c).

Step 3. Does the impairment "meet or equal" one of a list of specific impairments described in the regulations? If so, the claimant is "disabled" and therefore entitled to [DIB]. If the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, then the claimant's case cannot be resolved at step three and the evaluation proceeds to step four. See 20 C.F.R. § 404.1520(d).

Step 4. Is the claimant able to do any work that he or she has done in the past? If so, then the claimant is "not disabled" and is not entitled to [DIB or SSI]. If the claimant cannot do any work he or she did in the past, then the claimant's case cannot be resolved at step four and the evaluation proceeds to the fifth and final step. See 20 C.F.R. § 404.1520(e).

Step 5. Is the claimant able to do any other work? If not, then the claimant is "disabled" and therefore entitled to [DIB]. See 20 C.F.R. § 404.1520(f)(1). If the claimant is able to do other work, then the Commissioner must establish that there are a significant number of jobs in the national economy that claimant can do. There are two ways for the Commissioner to meet the burden of showing that there is other work in "significant numbers" in the national economy that claimant can do: (1) by the testimony of a vocational expert [("VE")], or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2 [("the Listings")]. If the Commissioner meets this burden, the claimant is "not disabled" and therefore not entitled to [DIB or SSI]. See 20 C.F.R. §§ 404.1520(f), 404.1562. If the Commissioner cannot meet this burden, then the claimant is "disabled" and therefore entitled to [DIB or SSI]. See id.

Id. at 1098-99.

### B. Summary Of The ALJ's Findings

The ALJ determined that "[Plaintiff] meets the insured status requirements of the . . . Act through September 30, 2015." Tr. 22. The ALJ then found at step one, that "[Plaintiff] has not engaged in [SGA] since February 6, 2014, the alleged onset date (20 C.F.R. 404.1517 et seq., and 416.920(c))." Id.

At step two, the ALJ found that "[Plaintiff] has the following severe impairments: history of traumatic brain injury in 2008, bilateral carpal tunnel syndrome status-post release procedures in 2008 and 2009, mood disorder, and generalized anxiety disorder (20 CFR 404.1520(c) and 416.920(c))." Id. The ALJ found, however, that Plaintiff's obesity and hypertension were not severe impairments. Id.

At step three, the ALJ found that "[Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of

the listed impairments in [the Listings]." Tr. 23. In so finding, the ALJ specifically assessed that "[t]he severity of [Plaintiff's] mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.02, 12.04, and 12.06[,]" because the "paragraph B" criteria are not satisfied. Id. The ALJ noted that "[t]o satisfy the 'paragraph B' criteria, the mental impairments must result in at least two of the following: marked restriction of activities of daily living [("ADLs")]; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration." Id. The ALJ found that the paragraph B criteria were not satisfied here because Plaintiff had only "mild" restrictions in his ADLs; and "moderate" restrictions in his social functioning and in his concentration, persistence, and pace; and "the claimant has experienced no episodes of decompensation, which have been of extended duration." Id.

In preparation for step four, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to "perform a range of medium work" and that Plaintiff can specifically "lift and/or carry up to 50 pounds occasionally and 25 pounds frequently; . . . stand and/or walk for a total of six hours[;] and sit for a total of six hours, in an eight-hour workday with normal breaks." Tr. 24. The ALJ also found that Plaintiff "can perform frequent postural activities; can perform frequent handling and fingering bilaterally; and should avoid concentrated exposure to hazards." Id. Finally, the ALJ found that Plaintiff is "limited to work involving simple repetitive tasks and should have no more than occasional contact with coworkers and the public." Id.

At step four, the ALJ found that "[Plaintiff] is unable to perform any past relevant work (20 CFR 404.1565 and 416.965)." Tr. 27.

At step five, the ALJ found that "[c]onsidering [Plaintiff's] age, education, work experience, and [RFC], there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform." Tr. 28. The ALJ, therefore,

6

concluded that "[Plaintiff] has not been under a disability, as defined in the . . . Act, from February 6, 2014[,] through [September 27, 2016,] the date of th[e] decision (20 CFR 404.1520(g) and 416.920(g))." Tr. 29.

### C. Plaintiff Challenges The ALJ's Analysis Of Dr. Flores' Opinion.

In this appeal, Plaintiff raises only one issue: whether the ALJ erred by discounting the opinion of Plaintiff's treating psychologist, Nelson Flores, Ph.D. ECF No. 23, Joint Stipulation at 4-5. Plaintiff specifically argues that the ALJ committed reversible error by discounting Dr. Flores's opinion because: (1) the ALJ improperly "relied on the opinions of Dr. Malancharuvil, the non-examining doctor at the hearing, over the opinions of Dr. Flores, the treating doctor"; (2) "the ALJ's articulated reasons for rejecting Dr. Flores' opinions lack merit because they only focus on the marked limitations in the three categories of daily living, social functioning, and concentration, persistence, and pace . . . [and] fail to address the other limitations that Dr. Flores assessed"; and (3) "[e]ven if the reasons that the ALJ articulated could be applied against the entirety of Dr. Flores' opinions, each of the ALJ's articulated reasons still lack merit." Id. at 5-12.

#### 1. ALJ's Analysis Of The Medical Evidence Relating to Plaintiff's Mental Impairments

##### a. Charlene Krieg, Ph.D.

The ALJ assessed the opinion of Plaintiff's examining clinical psychologist, Charlene Krieg, Ph.D. The ALJ noted that "[Plaintiff] underwent psychological evaluation by Dr. Krieg on October 1, 2014[,]" and "[b]ased on her interview, examination and testing, Dr. Krieg opined that [Plaintiff] was functioning such that he would have no limitation on the ability to perform even complex work tasks on a sustained basis." Tr. 25 (citing Tr. 518-24). The ALJ gave Dr. Krieg's opinion "[l]ittle weight" because "the evidence supports a finding of greater restriction." Tr. 26.

### b. Nelson Flores, Ph.D.

The ALJ also assessed the examination findings and opinion of Plaintiff's treating psychologist, Dr. Flores, and his psychology and testing reports of August 13, 2014. Tr. 25. In those reports, the ALJ noted that Dr. Flores reported "testing results indicative of moderate anxiety and depression, with no neuropsychological disturbance." Tr. 25 (citing Tr. 1121, 1136). The ALJ also observed Dr. Flores' treatment notes from March 5, 2015, "indicat[ing] that [Plaintiff's] emotional condition had improved with treatment." Tr. 25 (citing Tr. 1175).

The ALJ then contrasted Dr. Flores' aforementioned examination findings from August 2014 and March 2015, with Dr. Flores' opinion from a mental impairment questionnaire Dr. Flores completed on August 26, 2015. Tr. 25. The ALJ noted that in the August 2015 questionnaire, Dr. Flores opined that "[Plaintiff's] major depressive disorder would result in significant functional limitations such that [Plaintiff] would be unable to meet competitive standards in most areas of mental functioning, especially with regard to concentration, persistence and pace (though he noted that [Plaintiff] did not have a low IQ or reduced functioning)." Id. (citing Tr. 1174-76). The ALJ also noted that Dr. Flores concluded the questionnaire by opining that "[Plaintiff] would experience marked restrictions in all the 'paragraph B' functional areas." Tr. 25 (citing Tr. 1174-76).

The ALJ gave "[l]ess weight" to the limitations Dr. Flores endorsed in the August 2015 questionnaire, because, the ALJ reasoned, "Dr. Flores' conclusions that [Plaintiff] would have marked limitations with regard to [ADLs], social functioning, and concentration are not consistent with the clinical evidence as a whole." Tr. 26. The ALJ explained that, contrary to Dr. Flores' opinion he expressed in the questionnaire, "[Plaintiff's] mental status examinations have shown no significant deficits in memory or attention, [Plaintiff] has reported no significant problems with interpersonal relationships, and [Plaintiff] has

8

demonstrated a degree of functional ability over the course of the period at issue that is not reflective of marked limitations." Id.

### c. Haleh Safavi, M.D.

In the ALJ's analysis of Dr. Safavi's November 14, 2014, report, the ALJ noted that Plaintiff visited with Dr. Safavi to undergo an internal medicine evaluation. Tr. 25. At that time, Plaintiff's "chief complaints" were "carpal tunnel syndrome (status-post release procedures in 2008 and 2009) and generalized body aches (for which he was receiving pain management services)." Id. The ALJ noted that as a result of the exam, Plaintiff "demonstrated normal gait and maneuvering ability, with full strength and range of motion in all areas." Id. As a result of this examination in November 2014, "Dr. Safavi concluded that the claimant would be capable of performing a range of work at the medium exertional level involving frequent postural maneuvers and with no manipulative restrictions." Id. The ALJ gave "great weight to" Dr. Safavi's opinion. Tr. 26.

### d. Joseph Malancharuvil, Ph.D.

The ALJ assessed the opinion of psychological expert Dr. Malancharuvil, who reviewed Plaintiff's medical records and provided testimony and opinions regarding Plaintiff's mental impairments at the administrative hearing, on June 9, 2016. Id. at 26, 54. The ALJ observed that Dr. Malancharuvil opined that Plaintiff had "mild restrictions in [ADLs], mild-to-moderate difficulties with social functioning, and mild-to-moderate limitations with regard to concentration, persistence, and pace." Id. The ALJ assigned Dr. Malancharuvil's opinion "substantial weight" because he: (1) had reviewed all the medical evidence in the record; (2) had the opportunity to question Plaintiff about his impairments and had heard Plaintiff's testimony about his impairments at the administrative hearing; (3) understands Social Security disability programs and requirements; and (4) expressed opinions that "[we]re reasonable and consistent with the objective medical evidence." Id.

9

####### e. State Agency And Other Sources

Finally, the ALJ gave "some weight" to the opinions of the State agency reviewing psychological sources from the initial and reconsideration levels because, the ALJ explained, the "assessments were supported by substantial evidence as of the dates of those determinations[,]" and "[we]re not clearly inconsistent with any objective evidence received at the hearing level." Id. (citing Tr. 93-109, 129-45). The ALJ also noted the "[p]ain management progress notes from 2015" that "reflect no significant functional limitations despite [Plaintiff's] discomfort" and there was "effective mitigation of his symptoms with medication, and in August through October 2015 [Plaintiff] reported that his pain had been well managed." Tr. 25 (citing Tr. 1245, 1247, 1249, 1252-63).

### D. Standard To Review ALJ's Analysis Of Dr. Flores' Opinion

There are three types of medical opinions in Social Security cases: those from treating physicians, examining physicians, and non-examining physicians. Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 692 (9th Cir. 2009) (citing Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995)). "The medical opinion of a claimant's treating physician is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record.'" Trevizo v. Berryhill, 871 F.3d 664, 675 (9th Cir. 2017) (quoting 20 C.F.R. § 404.1527(c)(2)). "When a treating physician's opinion is not controlling, it is weighted according to factors such as the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability, consistency with the record, and specialization of the physician." Id. (citing 20 C.F.R. § 404.1527(c)(2)-(6)).

"'To reject [the] uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence.'" Id. (quoting Ryan v. Comm'r Soc. Sec. Admin., 528 F.3d 1194, 1198

(9th Cir. 2008)). "This is not an easy requirement to meet: 'the clear and convincing standard is the most demanding required in Social Security cases.'" Garrison v. Colvin, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting Moore v. Comm'r Soc. Sec. Admin., 278 F.3d 920, 924 (9th Cir. 2002)).

"'If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence.'" Trevizo, 871 F.3d at 675 (quoting Ryan, 528 F.3d at 1198). "This is so because, even when contradicted, a treating or examining physician's opinion is still owed deference and will often be 'entitled to the greatest weight . . . even if it does not meet the test for controlling weight.'" Garrison, 759 F.3d at 1012 (quoting Orn v. Astrue, 495 F.3d 625, 633 (9th Cir. 2007)). "'The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.'" Trevizo, 871 F.3d at 675 (quoting Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)).

Finally, an ALJ may accord great weight to a later opinion because it allows the examiner to provide a "more complete evaluation of the combined impact" of all of a person's impairments. Lester, 831 F.3d at 833 (citing Sprague v. Bowen, 831 F.2d 1226, 1231 (9th Cir. 1987)).

### E. Substantial Evidence Supports The ALJ's Conclusion.

Contrary to Plaintiff's argument that the ALJ did not address the various bases under which Plaintiff could be found to be disabled, the ALJ addressed each one of the criteria necessary to determine whether Plaintiff could qualify under the criteria of listings 12.02, 12.04, 12.06, and "paragraph B." Tr. 22. In doing so, and based on the analysis provided by the ALJ, as well as an independent review of the entire record by this Court, this Court cannot conclude that there was not substantial evidence to support the ALJ's findings and conclusions.

The ALJ gave less weight to the limitations Dr. Flores endorsed in the August 2015 questionnaire because those limitations were inconsistent with the other medical evidence in the record. In support of this conclusion, the ALJ pointed to specific examples of medical opinions, treatment records, and examination findings that were contradictory to Dr. Flores' opinion. Specifically, the ALJ cited to the opinions of Drs. Krieg and Malancharuvil and the other information in the medical record. Tr. 26. Accordingly, because the ALJ pointed to specific examples of Dr. Flores' opinion being contradicted by the opinions of other acceptable medical sources, the Court must determine whether the ALJ provided "specific and legitimate reasons that [were] supported by substantial evidence," Trevizo, 871 F.3d at 675, for discounting Dr. Flores' contradicted opinion. The Court finds that the ALJ satisfied this burden here.

The ALJ supported his conclusion that Dr. Flores' opinion was due less weight, by summarizing the conflicting medical evidence and stating his interpretations and conclusions about that evidence. Tr. 24-26. For example, the ALJ identified information in various reports by Dr. Flores that appear to be inconsistent with later opinions such that the ALJ could conclude that Dr. Flores's August 2015 conclusions were less reliable. Tr. 24-26. Specifically, the ALJ noted that the objective test results from Dr. Flores' August 2014 report indicated only moderate anxiety and depression symptoms and no neuropsychological disturbance. Tr. 24-25. A review of this report supports this conclusion, where Dr. Flores indicated that the test results were "indicative of moderate symptoms of anxiety," Tr. 1136; "moderate symptoms associated with depression," Tr. 1137; and "there is no indication that the patent may be experiencing neuropsychological disturbances." Tr. 1139.

The ALJ also cited to Dr. Flores' treatment notes from March 2015, which stated that Plaintiff's emotional condition had improved with treatment. Tr. 25, 1175. Finally, the ALJ observed Dr. Flores' opinion from August 2015, that

Plaintiff's major depressive disorder would result in significant functional limitations and that Plaintiff had marked limitations in all functional areas.

In addition to observing the inconsistencies between Dr. Flores' longitudinal treatment records of Plaintiff and the limitations he ultimately endorsed, the ALJ also observed the inconsistencies between the marked limitations Dr. Flores endorsed in August 2015, and the less restrictive limitations endorsed by every other doctor in the record. For example, The ALJ noted that after examining Plaintiff in October 2014, Dr. Krieg opined that Plaintiff had no limitation in his ability to perform even complex work tasks on a sustained basis. The ALJ also observed Dr. Malancharuvil's opinion that Plaintiff had only mild and moderate functional limitations as a result of his mental impairments. The ALJ found this opinion particularly persuasive because Dr. Malancharuvil had the benefit of reviewing the entire record and hearing Plaintiff testify about his impairments. This was appropriate for the ALJ to do in assigning different weight to various opinions. See Lester v. Chater, 81 F.3d 821, 833 (9th Cir. 1995), as amended (Apr. 9, 1996) (holding a later opinion "based on a more complete evaluation" of plaintiff's impairments should be accorded greater weight). Finally, the ALJ observed that the State agency reviewing psychological sources endorsed fewer restrictions than Dr. Flores endorsed in the August 2015 questionnaire.

Because the ALJ set out a detailed and thorough summary of the conflicting evidence from multiple medical sources and stated his interpretations and findings about that evidence, and because the ALJ's conclusion was consistent with that evidence, under the controlling standard of review, the Court cannot agree with Plaintiff's arguments that the ALJ erred in his analysis of Dr. Flores' opinion. Trevizo, 871 F.3d at 675; see also, Morgan v. Comm'r Soc. Sec. Admin., 169 F.3d 595, 600 (9th Cir. 1999) ("Opinions of a nonexamining, testifying medical advisor may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it." (citation omitted)).

In sum, though the Court is sympathetic to Plaintiff's condition and although Plaintiff disagrees with the ALJ's interpretation of this evidence, the Court does not second-guess the ALJ's conclusion, or substitute its judgment for that of the ALJ here because the ALJ's decision is reasonably supported by the evidence. Ghanim, 763 F.3d at 1163; Batson, 359 F.3d at 1196; Thomas, 278 F.3d at 959.

Accordingly, because the Court finds no error in the ALJ's analysis of Dr. Flores' opinion, the Court similarly finds no error in the Commissioner's conclusion that Plaintiff has not been under a disability, as defined in the Act, during the relevant time period.

### IV. CONCLUSION

Because the Commissioner's decision is based on proper legal standards and is supported by substantial evidence, the Commissioner's final decision is **AFFIRMED** and this case is **DISMISSED**.

IT IS SO ORDERED.

DATED: 5/31/2018

HONORABLE SHASHI H. KEWALRAMANI
United States Magistrate Judge